21-4122 Brown v. Nationwide Insurance. Ms. Spencer for the appellant. Good morning, your honors. May it please the court. Appreciate the opportunity to be here today. I represent the appellant in this matter and we're here today to talk about underinsured motorist coverage, which is a creature of statute. It is a part of the Utah code, the insurance code. And as a statute that is designed to benefit insureds and to protect them, it is a remedial statute that is supposed to be liberally construed in favor of finding coverage for insureds like appellant here who paid for underinsured motorist coverage. So we're here today on the grant of a Rule 12b-6 motion to dismiss. And we're here today to talk about the meaning of the word serve, to serve, the verb to serve in a particular section of the underinsured motorist statute. So we're here to talk about Utah code section 31a-22-305.3. And that's the section that talks about underinsured motorist coverage and creates a procedure by which a claimant can seek to have an underinsured motorist claim adjudicated by statute. Counsel, why doesn't Rule 4 govern service here? Rule 4 does not govern service, Your Honor, because the plain language of the statute in question can only be reasonably interpreted to provide for service akin to Rule 5, which means email service. So let me explain a couple of the reasons why. First of all, Your Honor, the statute in question makes explicit reference in several locations to specific rules of the Utah Rules of Civil Procedure. For example, in other sections, it talks about Rule 26, Governing Discovery. It talks about Rule 27, 37, 54, and 68. That's in subsection I. So the court knows how to, or excuse me, the Utah legislature knows how to spell out with specificity if a particular rule governs. They did not do that. It would have been a very easy thing for the legislature to say in the relevant subsection here that we're talking about, 8P, that the arbitration award to be subjected to a trial de novo would need to be served in accordance with Rule 4 of the Utah Rules of Civil Procedure. But isn't a trial de novo commencement of an action? It is commencement of a new action. That's the word that the, well, I mean, the section of the code talks about a trial de novo. So that is a commencement of an action, right? It is commencement of an action. But what our position is, Your Honor, is that this section does not require Rule 4, Service of Process. And for example, process, that's a good example of what's not in the statute. Rule 4 talks about service of the summons and complaint. And it talks about effectuating process. Process being served under Rule 4 is the mechanism by which the court acquires the ability to tell the parties what to do. The jurisdiction over the parties is, the service of the summons and complaint gives rise to that. And the State versus Bridgewater case is a Utah appellate decision. It talks about a similar statute, the protective order statute, a civil protective order statute. And the language there is different. And it's a good example of why we're not talking about Rule 4, Service of Process. Okay, before you talk about Bridgewaters, can I take you back to the statute? I wanna make sure I'm understanding what the statute requires. And as I read the statute, it says that within 20 days of receiving the award, if you wanna challenge that award, you've gotta do two things. One is file a complaint requesting trial de novo, which you did. And within 20 days, you also have to serve a non-moving party with a copy of that complaint. And importantly, once the first step is completed, but before the second step, the parties proceed under the Utah Rules of Civil Procedure, which means before the complaint is served, that's the second step, Utah Rules of Civil Procedure apply. And that means Rule 4 applies. Because Rule 4 governs the service of the complaint, not the pleadings. And you're not, we absolutely agree that Rule 4. It seems really simple. I'm not following you. Well, Rule 4 still applies. It still requires service of process. So this statute, it functions to give notice of appeal. That's essentially the function. And the notice is imparted by the email, which undisputedly occurred here. I think the facts are clear that if Rule 5 does apply, then appellant prevails here because notice was given, the email with the complaint attached, after it had been filed with the court, was sent to counsel for the insurance company on the same day the lawsuit was filed. And under Rule- Why should we understand the request for trial de novo as a notice of appeal? Well, I think that when you look at the context of the statute, that is the function in light of the fact that the parties have been through an extensive arbitration process, including discovery, including expert discovery, and a hearing that had occurred less than two weeks before this arbitration award was issued. So there is still a requirement to complete service of process under Rule 4. This statute requires notice to be given within 20 days. But it- It says for filing a complaint, a complaint requesting trial de novo. We're talking about not a notice of any kind of appeal, but filing a complaint. That's right. It does say that. But it doesn't say service of process. It doesn't say Rule 4 of the Utah Rules of Civil Procedure. It says serving the non-moving party with a copy of the complaint. And we know that Step 2, serving the non-moving party with a copy of the complaint, we know by that point, we're applying Utah Rules of Civil Procedure. And how do you do that under the Utah Rules of Civil Procedure? You look to Rule 4, which governs the serving of a complaint. Well, I think there's a couple other provisions of the statute that we would point to to suggest that that is not the correct answer here. So we cite to the Utah Arbitration Act, which contains more specific language talking about instituting a civil action, serving as would be sufficient to institute a civil action. It's different than the language that we have here. There's also a companion statute in the insurance code that deals with uninsured motorist coverage, and it also uses different language. So the legislature has evidenced its intent to provide greater specificity when Rule 4 type service is required. And without any specific reference to a summons, so let me put it this way. The statute says, let's assume it had been served according to Rule 4, but no summons were included. Rule 4 requires a summons. A summons has to be served in accordance with Rule 4, if it's just in a regular civil action. Here, if the complaint had been personally served without a summons, that would satisfy Section 31A-22-305.3 Subsection 8P, because no requirement is made of a summons to be served, but that would not satisfy Rule 4 of the Utah Rules of Civil Procedure. So once you get to Step 2, you have to satisfy Rule 4. So isn't that the serving of a summons necessarily included with serving a non-party? Well, I think that's sort of the rub, that's the rub of it, that's the whole dispute of it. And I think, Your Honor, when we look at the question that these statutes should be interpreted in favor of affording coverage, and liberally construed to provide insurance for people that pay for it and need it, who are, at least here, alleging harm, alleging injury. And so when we- Should we consider the intent behind the statutory scheme here if we think the language is clear? No, Your Honor. If the language is unambiguous, I don't believe that the rules of statutory construction would provide this Court any basis to delve into the legislative intent. But I think that the plain language of the statute can only be reasonably interpreted in one way. In light of the absence of any reference to the summons, in light of an absence, silence on the word process, in light of the distinctions between service and process being what effectuates the Court's jurisdiction over the parties, and also the fact that if we essentially interpret this section as being duplicative of, or simply reiterating what Rule 4 already requires, it renders superfluous or redundant either this section or Rule 4. And that is not a preferred interpretation of any statute to render any provision superfluous. In this statute, we're just saying, hey, you have to serve process. Well, Rule 4 already tells us that, so. Didn't your complaint include a bad faith claim? It does, and the bad faith- That's gonna require Rule 4 type service, won't it? Absolutely, Your Honor. And that goes to what we're saying here is that this complaint provides notice, but it also, it serves multiple functions. It provides notice, but it also is the vehicle by which this bad faith cause of action is now added to this proceeding. The arbitrator, by statute, did not have jurisdiction to adjudicate any claims for breach of the implied covenant of good faith and fair dealing. And the statute also states that the award is only final to matters other than matters that are excluded from the arbitrator's jurisdiction. And under subsection M, 8M, it makes clear that the arbitrator does not have the right to decide a bad faith claim. So assuming, as you've explained, your bad faith claim is sort of standalone, did you abandon it in the district court? Absolutely not, Your Honor. We did not abandon that claim. The district court did not address the provisions of the statute regarding the arbitrator's lack of authority to address the bad faith claim. Did you address it in response to the motion to dismiss? No, Your Honor. It was not addressed in response to- So can we consider that as indicia of abandonment? I don't believe so, Your Honor. We've argued essentially two points on that. First of all, there's good authority from this circuit that the district court does not have the authority to dismiss for lack of a response, that the court still must evaluate and analyze the issues, and that was not done here. And secondly, Your Honor, we have argued plain error review based upon the statute clearly articulating the inability of the arbitrator to decide that issue, and therefore the question of whether the bad faith claim needed to be served within 20 days, assuming the court is right on the assertion that the underinsured motorist trial de novo claim would need to be, which we submit, of course, that is incorrect as well. But even if that decision were correct, the statute is clear that the bad faith claim would not be subject to the 20-day requirement. So I believe that Your Honor should address that. It has not been abandoned, and that under plain error- Why isn't it more of a, as far as abandonment, why is it more of an affirmative waiver under this circumstance where you, there were a couple of arguments made in the motion to dismiss with respect to the bad faith claim, and then you filed a response, but not on the bad faith claim, only on the breach of contract claim. And had nothing in response to the bad faith argument. So I understand the case you're citing where there was no response filed at all, but here, doesn't this act more like an affirmative waiver where you file a response and choose not to respond at all to two specific arguments that are made? No, Your Honor, I believe a waiver has to be knowing and intentional, and I don't believe it was a forfeiture. It was not responded to in the opposition, and that is why, Your Honor, we have argued the plain error basis for review of that determination, because the district court did not address what the statute clearly states. So I believe that the answer this court should reach, in light of the fact that the opposition to the motion to dismiss did not address that question, is that plain error in light of the statute in subsection M, making absolutely clear that the arbitrator had no ability to decide that issue, that clearly the 20-day period would not govern any such claim. And if I may, I see I have 38 seconds. I would like to preserve that time for rebuttal. Certainly, thank you, Counsel. Thank you, Your Honors. Martin. May it please the Court, my name is Byron Martin. I represent the appellee in this case. I want to touch on a theme that my colleague raised in her comments relative to the policy behind wanting to get insurance proceeds into the hands of injured parties. I think it's very important to flag for this court that the decision of Judge Barlow and the decision of this court, however it rules, will have equal effect on insureds and insurance companies. The decision to request a trial de novo can be exercised by either the insurance company or the insured at the end of an arbitration that doesn't go so well. And so insurance companies are held to the same standards that we're arguing for today. We're arguing that it's gotta be done quickly, within 20 days. We're arguing that it's gotta be done under Rule 4. These are tight procedures, but they apply equally to the insured as they do to the insurance company. So this means that while this may cut against Ms. Brown in this particular case, it may cut against an insurance company down the road if it does not meet those requirements. So to frame this case as one implicating a policy where we need to bend over backwards for a particular insured, I don't think is the right fit. So what in the text supports you, supports your position? Because I think we were looking at the statute and trying to discern that the statutory text supports your position, right? So what is that position? And can you go through the actual text and point to why it supports Rule 4? Yes. So the position we take is that Rule 4 service is required because of the Maxfield case, the Maxfield doctrine. In the Maxfield case, what it teaches us is anytime you have a special statutory proceeding in Utah, the words used in that statute are defined by the Utah Rules of Civil Procedure. And any gaps or silence within that statute is backfilled by the Utah Rules of Civil Procedure. So the silence or the omission of a word is the flag for you to turn to the Utah Rules of Civil Procedure to determine what it's actually talking about. So in terms of text, when we look at the statutory phrasing question where it says, serve a copy of the complaint, then you say, aha, we know from Maxfield that when they say serve, they're referring to the Utah Rules of Civil Procedure. And when they say complaint, they're referring to the Utah Rules of Civil Procedure. So let's go there and see how do you serve a complaint? 10 out of 10 times, an original complaint is served under Rule 4. Zero out of 10 times is an original complaint served under Rule 5. So our position is quite simply that the words serve a copy of the complaint when understood and interpreted under the Utah Rules of Civil Procedure can mean only one thing. And I think that conclusion is strengthened when you observe that these requirements of file a complaint, then serve the complaint are in such close succession, right? We harmonize the provisions of this statute and so we see how close they are. It evokes that familiar cadence of commence an action under Rule 3 and then serve it under Rule 4. What about the fact, though, that it has a 20-day period when Rule 4 has a 120-day period? So this comes, again, back to the Maxfield Doctrine. If I may, I will just read a phrase from Maxfield that I think captures what the Maxfield case says is that, quote, if the legislature seeks to supersede the Rules of Civil Procedure for special statutory proceedings, then it must adopt provisions that clearly counter in this override our generally applicable rules. So the Utah Rules of Civil Procedure are the default, but then they can go in surgically and modify any particular rule they want to, but they have to use clear language doing so. And that's what they've done here is they've said we've taken the 120-day period and we've shrunk it down to 20 days. Now, we attached to our brief a copy of the Wells v. Hartford decision. That's a 2013 United States District Court decision where the federal judge there addressed that very issue and said, look, because the party there had argued that 120 days for service would be the standard. The judge looked at that and said, the legislature has shortened that time period down to 20 in a specific language. And so the holding in Wells was you had 20 days to serve, not 120 days to serve. That, of course, isn't binding, but it's helpful to know that at least one other set of eyes has taken a look at this and ruled in the same way that Judge Barlow did below. The bad faith claim is not governed by the 20-day limitation period. Why shouldn't we consider that, especially since there's either no or minimal discussion of the reason why the court dismissed that claim? There are two reasons. The first reason is abandonment. And let me describe the reasons I feel that there was, in fact, an abandonment. As the court knows, we raised substantive arguments in our motion to dismiss that were not responded to or challenged in any way. And we know they didn't forget about their implied covenant claim. In their memorandum in opposition, we know that because on the second to last page of their memorandum, they flagged the existence of that claim to the court's attention. They say, Judge, we filed two claims, a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing. That's on page 10 of their memorandum. I think it's page 316 of the appendix. And, 317, excuse me. And so, but then they go on to say to the court what relief they want. And they say, we want the trial to no vote. So knowing that they didn't forget about it and then intentionally didn't respond to it signals an attempt to abandon. And now it's also the case that we brought this to the trial court's attention in our reply memorandum. And we said, look, it's clear based on their failure to respond that they've conceded that they don't have a viable bad faith claim here. And they didn't make any effort after that to go back to the district court to clarify. Request leave to file supplemental brief. It was crickets, which we think is another indication because we had clearly stated our position. This is an abandonment. And there was no response to that. Now, I think it's interesting too. Obviously, Judge Barlow was not very talkative in his opinion relative to the bad faith claim. But interestingly, I think there is a clue in his ruling that is intentionally placed there. So if you go to the last page of his ruling, the very last sentence says this, quote, because plaintiff's failure to serve defendant within the statutory period extinguishes her claim, he references claim singular. So at this point, Judge Barlow is already thinking he's only dealing with one claim. Well, it would have been helpful if Judge Barlow would have said so. Because otherwise, doesn't Judge Barlow have the obligation when a motion to dismiss is filed to address the pleadings and whether they satisfy standard and regardless of whether there's a response, which is basically what we've said. If there's no response, the district court still has an obligation to address the motion and the issues. Well, and that's correct, Your Honor. But under Rule 52, there is no requirement for him to specify in his ruling the conclusions and the findings of his decision. And he did drop an indication here by indicating he's only ruling on a singular claim that in his mind, the other claim has been abandoned. Unfortunately, that's all the context we get from him. But that's not the only basis that the implied covenant claim should be dismissed. The second basis is that there was an additional abandonment or waiver on appeal. In their opening appellate brief, they again did not address the substantive arguments that we had marshaled in favor of dismissing the bad faith claim, the fairly debatable defense, and the res judicata defense. They didn't touch it. And in our appellate brief, we called that out and said, look, Judge Barlow did or could have dismissed the bad faith claim on four separate grounds, fairly debatable, res judicata, abandonment, and then, of course, as my colleague pointed out, the potential existed that he dismissed the claim simply for failing to serve the complaint within 20 days. Now, to overcome the dismissal, it would have been their burden to argue plain error and describe why the result of dismissing the complaint was plain error. And they don't do enough to get across the finish line. All they address is subsection M. They say nothing about fairly debatable, nothing about res judicata, and nothing about potential abandonment. And if they remain silent on those issues, they have not carried their burden to show that the result of the case was plain error. And that marks the end of the road for their claim on the breach of the implied covenant matter. So there are two separate independent bases, we think, that this court can affirm the dismissal. One is abandonment below. And second is a waiver on appeal for failure to sufficiently address the plain error standard. I wanted to ask the court that there hasn't been any discussion thus far on the issue of subject matter jurisdiction. That occupied a large percentage of the briefing from the appellant. And I did want to just briefly hit on a couple of issues and also open it up for any questions. But our position on that is that the policy of insurance that we submitted to the court was submitted with certification under penalty of perjury. It was not contested at the trial court level. It clearly shows that the insurance company is depositors. And the arbitration award also clearly shows that the party in question is depositors. We want to have- Are they in the caption? They are not in the caption. But what the cases indicate is that in terms of jurisdiction, what's important is what is in the body of the complaint. So it's a body of the complaint test. The body of the complaint specifies with enough detail that you can reverse engineer exactly who it is. Then it is okay at the election of that party to appear and remove. And that's exactly what depositors did in this case. Because they identify in their complaint that they want to sue the insurer. Depositors is the insurer. We submitted the evidence of that through the insurance policy. And based on the line of cases from one beacon and other cases in the Ninth Circuit, as long as we can show that we are the party intended to be sued under the- that they intended to sue, we do have that election to appear and remove, which is what we did. Any questions in regard to subject matter jurisdiction from the court? Okay. I will go ahead and conclude my remarks. If there's nothing further, I'll go ahead and turn it over to my colleague. Thank you, counsel. Yep. Thank you. Could you provide a minute, please? Thank you, your honors. I'm gonna go quickly, because I want to try to respond to as many of those points as I can. Regarding the assertion of a waiver on appeal, that is incorrect. The district court did not address the bases that are argued by the appellee on appeal for affirmance on an alternative basis. And as the appellant, I am not required to address in my opening brief grounds for a reversal that were not included in the district court's order. So there has not been a waiver on appeal. We argued the statute and the fact that it clearly says that the arbitrator cannot decide the bad faith issue. Regarding the jurisdictional question, I hate to use a tired cliche here in this court, but it's one of those things, you cannot have your cake and eat it too. And that's sort of the problem that we have with what the insurance company is doing here with the removal. Because it would have been a very simple thing for counsel to essentially submit a stipulated motion to correct the caption or to substitute parties or have the proper party intervene and then remove the action immediately after whoever the proper insurance company is was named as a defendant in this case and listed in the caption and as a party that could be identified on the civil court cover sheet and in the notice of removal. And that was not done. We've cited the cases in our brief that clearly state that a non-party does not have the ability to remove a civil action. But it's either the insurance company or it's not. And I think there's a bit of a conflict between the position that they are taking with respect to removal and then their argument that the appellant did not timely assert a claim against the insurance company. They can't have that both ways. So we would ask your honors to reverse the district court and remand this case for further proceedings. Thank you, your honors. Thank you, counsel, we appreciate the arguments. You are excused, the case is submitted.